IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DISABILITY RIGHTS PENNSYLVANIA, | : |
| Plaintiff, | : |
| v. | : Civil Action No. _____ |
| SCHOOL DISTRICT OF PHILADELPHIA and WILLIAM R. HITE, JR., in his official capacity as Superintendent of the School District of Philadelphia, | : |
| Defendants. | : |

## COMPLAINT

**I.   Introduction**

1. Plaintiff, Disability Rights Pennsylvania (DRP), the organization designated pursuant to federal law to investigate abuse and neglect of Pennsylvanians with disabilities, brings this lawsuit to challenge the Defendants' refusal to provide access to parental and guardian contact information for the approximately 120 students with disabilities who the Defendants' publicly stated were on a "waiting list" for appropriate special education services.

2. DRP is entitled to receive the requested parent/guardian contact information in accordance with its authority to investigate neglect of

Pennsylvanians with developmental disabilities, such as the students on the Defendants' waiting list, under the Developmental Disabilities Assistance and Bill of Rights Act (DD Act), 42 U.S.C. §§ 15041-15045, or, alternatively, under the Protection and Advocacy for Individuals with Mental Illness (PAIMI) Act, 42 U.S.C. § 10801-10827.

3. Defendants' refusal to provide DRP with the requested parent and guardian contact information for students on the waiting list violates 42 U.S.C. § 1983 and the DD Act or, alternatively, 42 U.S.C. § 1983 and the PAIMI Act.  DRP seeks appropriate declaratory and injunctive relief.

## II.     Jurisdiction and Venue

4. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331.  Declaratory relief is sought under 28 U.S.C. §§ 2201 and 2202.

5. Plaintiff's claims are authorized by 42 U.S.C. § 1983, the DD Act, 42 U.S.C. §§ 15041-15045, and the PAIMI Act, 42 U.S.C. §§ 10801-10827.

6. Venue in this District is appropriate pursuant to 28 U.S.C. § 1391(b)(1)-(2) since Defendants are located in this District and all of the events and omissions that gave rise to the Complaint occurred in this District.

## III.     Parties

7.     Plaintiff DRP is a non-profit Pennsylvania corporation.  The Commonwealth of Pennsylvania has designated DRP as the organization with responsibility to advocate for and protect the rights of individuals with disabilities and to investigate abuse and neglect of individuals with disabilities pursuant to, *inter alia*, the DD and PAIMI Acts.

8.     Defendant School District of Philadelphia ("School District") is a school district of the first class within the Commonwealth of Pennsylvania organized pursuant to the Public School Code of 1949, as amended, 24 P.S. §§ 1-101 *et seq.*, and is responsible to provide education services for Philadelphia public school students.

9.     Defendant William R. Hite, Jr., Ed.D. is the Superintendent of the School District of Philadelphia with responsibility to assure compliance with federal laws.  Dr. Hite is sued only in his official capacity for actions and omissions taken under color of state law.

## IV. <u>Factual Background</u>

10. DRP is the protection and advocacy system designated by the Commonwealth of Pennsylvania to protect the rights of and advocate for Pennsylvanians with disabilities pursuant to the federal DD and PAIMI Acts.

11. Under the DD Act, DRP has the duty to protect the legal and human rights of and advocate for individuals with developmental disabilities. 42 U.S.C. §§ 15041, 15043. For purposes of the DD Act, a developmental disability for an individual age 9 and older is a severe, chronic disability that is attributable to a mental or physical impairment, is manifested before the age of 22, is likely to continue indefinitely, results in substantial functional limitations in three or more specified major life activities, and reflects the individual's need for services, supports, or other forms of assistance. 42 U.S.C. § 15002(8)(A).

12. Intellectual disability, autism, severe emotional disturbance, and learning disabilities, for example, are developmental disabilities covered by the DD Act.

13. Under the PAIMI Act, DRP has the duty to protect the legal and human rights of and advocate for individuals with mental illness. 42 U.S.C. §§ 10801(b), 10805. For purposes of the PAIMI Act, an individual with

mental illness is a person who has a significant mental illness or emotional impairment.  42 U.S.C. § 10802(4).

14. The DD and PAIMI Acts confer upon protection and advocacy systems, such as DRP, the authority to investigate incidents of abuse and neglect of individuals with, respectively, developmental disabilities and mental illness when the incidents are reported or there is probable cause to believe that the incidents occurred.  42 U.S.C. §§ 10805(a)(1)(A), 15043(a)(2)(B).

15. To assure that the protection and advocacy systems, such as DRP, can implement their investigative authority, the DD and PAIMI Acts provide them with certain tools.  Among those tools is the right to access the records of individuals with developmental disabilities and mental illness under defined circumstances.  42 U.S.C. §§ 10805(a)(4), 15043(a)(2)(I).

16. Protection and advocacy systems, such as DRP, have the right to access the records of individuals with developmental disabilities and mental illness if, *inter alia*, they or their legal representatives authorize such access.  42 U.S.C. §§ 10805(a)(4)(A), 15043(a)(2)(I)(i).  Legal representatives include parents or guardians of minor children.

17. In the absence of authorization by an individual with a disability to allow a protection and advocacy system, such as DRP, access to his or

5

her records, the protection and advocacy system may nevertheless access such records if, *inter alia*:  (a) the individual has a legal representative; (b) the system has received a complaint about the individual or has probable cause to believe that the individual has been subject to abuse or neglect; (c) the system has contacted the legal representative "upon receipt of the name and address of such representative" and offered assistance to the representative; and (d) "such representative has failed or refused to act on behalf of the individual."  42 U.S.C. §§ 10805(a)(4)(C), 15043(a)(2)(I)(iii).

18. Defendant School District is a Local Educational Agency under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 *et seq.*, with responsibility to assure that students with disabilities within its jurisdiction receive a free appropriate public education (FAPE).

19. In the spring of 2017, the Defendants announced a proposal to contract with a private provider, Catapult Learning, Inc., to create and operate a segregated school for students with disabilities (the "Catapult Program").

20. The Defendants intended that the Catapult Program would serve, among others, Philadelphia students who had been placed by the School District at Wordsworth, an Approved Private School ("APS"), in Fort Washington, Pennsylvania, since the School District determined it would

cease utilizing Wordsworth when its contract with that facility expired on June 30, 2017.

21. Defendants also initially publicly stated that they intended that the Catapult Program would serve other students with disabilities, including about 120 students with disabilities on a "waiting list" for APS placements.

22. Defendant Hite, the School District Superintendent, stated after a June 2017 meeting of the School Reform Commission that there is a significant shortage of programs that can meet the needs of students with significant and multiple disabilities. Dr. Hite stated: "There are a significant number of children who should be in those placements who cannot get in. They're on a waitlist, if you will. Quite frankly, there are no providers that will currently take those children."

23. The School District has determined that all of the students on its waiting list for APS schools have disabilities.

24. The students on the School District's APS waiting list are individuals with developmental disabilities covered by the DD Act.

25. Some of the students on the School District's APS waiting list also are individuals with mental illness covered by the PAIMI Act.

26. The School District determined that the students on its APS waiting list require special education services under the IDEA.

27. All of the students on the School District's APS waiting list have Individualized Education Plans (IEPs) that called for APS placement, but, on information and belief, they are not or were not receiving services in accordance with their IEPs.

28. Students who do not receive services in accordance with their IEPs are denied FAPE in violation of their rights under the IDEA.

29. On information and belief, students on the School District's waiting list are or were not receiving any education or, at best, were placed in inappropriate educational programs or settings, such as alternative schools, that were not appropriate to meet their special education needs and were inconsistent with their IEPs.

30. Under the DD and PAIMI Acts, "neglect" encompasses acts or omissions by a person responsible for providing services, supports, or other assistance to a person with a covered disability which caused or may have caused injury to such a person. "Neglect" includes the failure to establish or implement an appropriate program plan, such as an IEP. *See* 42 C.F.R. § 51.2; 45 C.F.R. § 1326.19.

31. Based on the Defendants' public representations that the School District had a list of approximately 120 students with disabilities waiting for appropriate educational services – and, concomitantly, that

8

those students were not receiving the necessary educational services identified in their IEPs – DRP had both received complaints about those students and had probable cause to conclude that those students were subject to neglect under the DD Act, or alternatively under the PAIMI Act, and to warrant investigation.

32. To investigate whether the School District neglected students on the waiting list, DRP would need to access the records of those students. However, since the students were likely minors with parents or other legal guardians, *i.e.*, "legal representatives," the DD and PAIMI Acts require DRP to make good faith efforts to contact the legal representatives upon receipt of names and addresses. 42 U.S.C. §§ 10805(a)(4)(C)(i), 15043(a)(2)(I)(iii)(III). The Acts thus authorize DRP to receive contact information for individuals with disabilities who have legal representatives.

33. In addition, educational agencies, including public school districts, specifically are obligated to provide a protection and advocacy system, such as DRP, "with the name and contact information for the parent or guardian of a student for whom the [system] has probable cause to obtain records under the DD Act." 45 C.F.R. § 1326.25(f).

34. The DD and PAIMI Acts also require that an entity, such as the School District, from which a protection and advocacy system, such as

9

DRP, seeks access information must promptly provide a written statement of reasons in the event that it declines to provide the requested information. *See* 42 C.F.R. § 51.43; 45 C.F.R. § 1326.26.  If, for instance, an entity declines to provide requested records of a person with a disability on the basis that the individual has a guardian, it is incumbent on the entity to provide the protection and advocacy system with contact information for the guardian.

35.   On June 20, 2017, DRP emailed a letter to Defendant Hite explaining its intent to investigate the waiting list issue and requesting that the School District provide DRP with the contact information for the parents and guardians of all students on its waiting list no later than June 28, 2017. The Defendants never responded to that letter.

36.   On July 10, 2017, DRP sent by email and first class mail a letter to the School District's Interim General Counsel.  The July 10 letter enclosed DRP's June 20 letter to Defendant Hite and asked that the previously requested directory information be provided to DRP by no later than July 17, 2017.  Again, the Defendants never responded to that communication.

37. On September 18, 2017, a DRP attorney left a message with the School District's Interim General Counsel's secretary regarding DRP's request for the contact information to no avail.

38. Having still heard nothing, a DRP attorney emailed the School District's Interim General Counsel on September 21, 2017 to advise that DRP would pursue litigation to secure the requested information absent some response. Once again, the Defendants never responded to that communication.

**V.  Claims**

39. Paragraphs 1 through 38 are incorporated herein by reference.

40. DRP has been designated as the protection and advocacy system in Pennsylvania pursuant to the DD and PAIMI Acts.

41. Under 42 U.S.C. § 1983, the Defendants may not act under color of state law to deny DRP the access to records and contact information to which it is entitled under the DD and PAIMI Acts and which it needs to implement its investigative authority under those statutes.

42. The DD Act confers authority on DRP to "pursue legal, administrative, or other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of" Pennsylvanians with

developmental disabilities who are or who may be eligible for treatment, services or habilitation.  42 U.S.C. § 15043(a)(2)(A)(i).

43.    The PAIMI Act confers authority on DRP to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in" Pennsylvania.  42 U.S.C. § 10805(a)(1)(B).

44.    Students on the School District's waiting list have developmental disabilities and are eligible for special education services under the IDEA.  Accordingly, those students are within the group of persons for whom DRP may advocate under the DD Act.

45.    Some of the students on the School District's waiting list also may have mental illness so that they are within the group of persons for whom DRP may advocate under the PAIMI Act.

46.    Defendants have refused to provide DRP with the contact information it has repeatedly requested for the parents and guardians of students on its waiting list for APS services to enable DRP to offer assistance to those families and to investigate possible neglect of those students.

47. Defendants' actions and omissions under color of state law violate 42 U.S.C. § 1983 and the DD Act, 42 U.S.C. §§ 15043(a)(2)(I)(iii) and 45 C.F.R. §§ 1326.25(a)(3), 1326.25(f), 1326.26.

48. Defendants' actions and omissions under color of state law also violate 42 U.S.C. § 1983 and the PAIMI Act, 42 U.S.C. § 10805(a)(4)(C) and 42 C.F.R. §§ 51.41(b)(3), 51.43.

## VI. Relief Requested

49. Plaintiff respectfully requests that the Court award the following relief:

    a. exercise jurisdiction over this action;

    b. issue appropriate declaratory and injunctive relief;

    c. grant such other relief as may be appropriate, including reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

Dated: October 31, 2017    By: /s/ Gabriella Labella
    Gabriella Labella (PA ID # 87858)
    Robin Resnick (PA ID # 46980)
    Disability Rights Pennsylvania
    1315 Walnut Street, Suite 500
    Philadelphia, PA  19107-4705
    215-238-8070

    Counsel for Plaintiff