IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DISABILITY RIGHTS PENNSYLVANIA, | : |
| Plaintiff, | : |
| v. | : No. 17-cv-4858-NIQA |
| SCHOOL DISTRICT OF PHILADELPHIA, et al., | : |
| Defendants. | : |

## <u>MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff, through its

counsel, submits this Motion for Summary Judgment.  In support of this Motion,

Plaintiff submits the accompanying Memorandum of Law and Exhibits, which are

incorporated by reference as if fully set forth herein.

Respectfully submitted,


Dated:  March 1, 2018          By:    /s/ Gabriella Labella
                                      Gabriella Labella (PA ID # 87858)
                                      Robin Resnick (PA ID # 46980)
                                      Disability Rights Pennsylvania
                                      1315 Walnut Street, Suite 500
                                      Philadelphia, PA  19107-4705
                                      215-238-8070

                                      Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DISABILITY RIGHTS PENNSYLVANIA, | : | |
| Plaintiff, | : | |
| v. | : | No. 17-cv-4858-NIQA |
| SCHOOL DISTRICT OF PHILADELPHIA, et al., | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Disability Rights Pennsylvania (DRP), through its counsel, submits this Memorandum of Law in Support of its Motion for Summary Judgment. Pursuant to the Developmental Disabilities Assistance and Bill of Rights Act (DD Act), 42 U.S.C. §§ 15041-15045, and the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI Act), 42 U.S.C. §§ 10801-10827, DRP had the right to receive contact information for parents, guardians, or other legal representatives of students with disabilities who Defendants, the School District of Philadelphia and its Superintendent (collectively, the School District), publicly stated were on a "wait list" and were not receiving special education services that they had been determined to need.  In refusing to provide the requested information, the School District violated 42 U.S.C. § 1983, the DD Act, and the

PAIMI Act.  DRP is thus entitled to the entry of summary judgment against the School District.

**FACTUAL AND PROCEDURAL BACKGROUND**

DRP is the organization designated by the Commonwealth of Pennsylvania as the protection and advocacy system (P&A system) pursuant to the DD and PAIMI Acts.  Compl. & Answer ¶¶ 7, 10 (Exh. A & B).  As the P&A system in Pennsylvania, DRP protects the rights of and advocates for Pennsylvanians with disabilities pursuant to the DD and PAIMI Acts.  42 U.S.C. §§ 10805(a), 15043(a).

At a meeting of the School Reform Commission (SRC) on June 15, 2017, the School District publicly announced a proposal for a three-year, $36 million contract with a private provider, Catapult Learning, Inc., to create and operate an "Alternative Special Education Program" (the Catapult Program) beginning in the 2017-18 school year.  SRC Public Meeting Resolution Summary at 111-12 (June 15, 2017) (excerpts submitted as Exh. C).  The School District stated that the Catapult Program would provide educational services to 200 students with disabilities, primarily those with diagnoses of "emotional disturbance" disabilities "combined with low-incidence disabilities, including intellectual disabilities, autism and multiple impairments."  *Id.*

In a news article describing the June 15, 2017 meeting, it was reported that the School District's Superintendent, Dr. William R. Hite, "told reporters that there is an acute shortage of programs in the area available to meet the needs of

2

hundreds of students with multiple disabilities." D. Mezzacappa and A. Wolfman-Arent, *SRC delays vote on $36 million contract for special ed school*, The Notebook at 3 (June 15, 2017) (Exh. D).  The article quoted Dr. Hite as stating that "[t]here are a significant number of children who should be in those placements who cannot get in.  They're on a waitlist, if you will.  Quite frankly, there are no providers that will currently take those children."  *Id.*

On June 19, 2017, the School District emailed to an education advocate revisions to the proposed Catapult Program (the Revised Resolution) along with "Parent Talking Points" and other documents.  Email from M. Hazel (School District) to M. McInerney (Education Law Center) dated June 19, 2017 and Attachments 1-5 (Exh. E).  The School District's June 19, 2017 communication and attachments, including the Revised Resolution and Parent Talking Points, were forwarded to DRP staff on June 19, 2017.  Email from M. McInerney to K. Darr, *et al.* dated June 19, 2017 (email without attachments submitted as Exh. F).

The School District's Revised Resolution included a detailed "justification" for the Catapult Program, which stated:

> *This resolution is addressing a district need to serve our special education students per the student's IEP [Individualized Education Program].*  [sic]  The District currently places many students with special needs in approved private schools (APS), because their needs are unique and particular and unable to be served by conventional School District programs.  APSs are often located in isolated areas or far away from the city's center, sometimes resulting in a two-hour commute for students. The School District wants to be able to offer high quality programming for Philadelphia students in Philadelphia and in facilities that also include general education programs.

3

Revised Resolution at 3 (emphasis added) (Attachment 1 to Exh. E).[1]

In the Revised Resolution's justification, the School District identified two groups of students to be served by the proposed Catapult Program:  (a) approximately 100 students with disabilities who had been placed at Wordsworth Academy, an approved private school with which the School District had decided to cease contracting after the 2016-17 school year, and (b) approximately 120 students with disabilities who were on a wait list for placement in approved private schools.  Revised Resolution at 3-4.  With respect to the 120 wait list students, the School District explained:

> The number of students needing special education services has grown over time.  *All decisions for placement at an approved private school are made by the student's individualized educational program team*.  The number of decision[s] for placements has increased, however, the number of spots at these schools has remained the same.  …  *This year, as in years past, the number of seats does not meet current need. Currently, there are approximately 120 students who are awaiting an appropriate placement (as determined by the IEP team), which the District wants to offer*.

*Id.* at 4 (emphases added); *see also* Parent Talking Points – IU Program (stating that the Catapult Program "may also be a good option for students who are on a wait list for a private school.") (Attachment 5 to Exh. E).

---

[1] IEPs are developed and implemented for children with disabilities pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1414(d).

On July 6, 2017, the School District announced further revisions to the proposed Catapult Program, stating that it would serve only 100 students in the 2017-18 school year (rather than the more than 200 students previously proposed). *See* SRC Public Meeting Resolution Summary at 3-4 (July 6, 2017) (Exh. G). Given the Program's reduced size, it appears that in the 2017-18 school year most of the Catapult Program students would be former Wordsworth Academy students rather than students on the wait list. *See id.* at 4.

Based on statements by the School District and its officials, DRP thus had reason to conclude as follows:

- There were about 120 Philadelphia students with developmental and mental health disabilities who had IEPs pursuant to the IDEA and whose IEP teams had determined that they should be placed in approved private schools.

- The School District had not placed those students in approved private schools in accordance with their IEP teams' determinations and, instead, those students were on a "wait list" due to an acute shortage in approved private school placements.

- The Catapult Program, as ultimately approved by the School District, would not serve most of the wait list students and, as a result, they would remain without the services in the approved private schools determined by their IEP teams to be necessary.

Accordingly, DRP determined that it had probable cause to believe that the 120 students on the wait list had been subject to neglect.  DRP then sent letters to the School District, stating that it was investigating whether students on the wait list were receiving appropriate services and requesting that the School District provide DRP with contact information for the parents and guardians of students on the wait list.  Letter from G. Labella to M. Shore dated July 10, 2017 & Enclosure (Exh. H); Compl. & Answer ¶ 36.  The School District did not respond.  Compl. & Answer ¶ 36.  On September 21, 2017, DRP emailed the School District to advise that, absent a response, it would pursue litigation to secure the requested information.  Compl. & Answer ¶ 38.  Again, the School District did not respond.  *Id.*  Receiving no responses to its inquiries, DRP filed this lawsuit.

## **ARGUMENT**

## I. **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Barna v. Bd. of School Directors of Panther Valley School Dist.*, 877 F.3d 136, 141 (3d Cir. 2017); *Moody v. Atlantic City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017).  A dispute "'is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.'"  *Moody*, 870 F.3d at 213 (citation omitted).  Here, the only

6

issue in dispute is the interpretation of the governing law, *i.e.*, whether the DD and PAIMI Acts authorized DRP to receive from the School District contact information for the parents of students on the wait list.  As such, summary judgment is appropriate.  *See Joyce v. Maersk Line Ltd.*, 876 F.3d 502, 505 (3d Cir. 2017).

## II.  OVERVIEW OF THE P&A SYSTEMS' AUTHORITY UNDER THE DD AND PAIMI ACTS.

Congress created independent protection and advocacy systems in 1975 through what is now called the DD Act, Pub. L. No. 94-103, § 203, 89 Stat. 486, 504 (1975), now codified at 42 U.S.C. §§ 15041-15045.  The DD Act's purpose is "to provide for allotments to support a protection and advocacy system … in each State to protect the legal and human rights of individuals with developmental disabilities."  42 U.S.C. § 15041.  The DD Act provides that, to receive allotments, a state must put "in effect a system to protect and advocate the rights of individuals with developmental disabilities."  42 U.S.C. § 15043(a)(1).  These are known as the "P&A systems."

A little more than a decade later, Congress expanded the P&A systems' responsibilities by enacting what is now called the PAIMI Act, Pub. L. No. 99-319, 100 Stat. 478 (1986), codified at 42 U.S.C. §§ 10801-10827.  The purpose of the PAIMI Act is "to assist states to establish a protection and advocacy system for individuals with mental illness …."  42 U.S.C § 10801(b).  Congress directed that the PAIMI P&A system be the same as the P&A system established pursuant to the DD Act.  42 U.S.C. § 10802(2).

7

DRP is the designated P&A system in Pennsylvania.  *See* discussion, *supra,* at 2.  As such, it can exercise the authority conferred by Congress on such systems through the DD and PAIMI Acts.  The DD and PAIMI Acts vest P&A systems with a wide range of authority, including authority to "pursue legal, administrative, and other appropriate remedies" to assure the protection of and advocacy for the rights of individuals with developmental disabilities and mental illness.  42 U.S.C. §§ 10805(a)(1)(B); 15043(a)(2)(A)(i).  Specifically, the DD and PAIMI Acts allow P&A systems to:

- **investigate suspected abuse and neglect**, 42 U.S.C. § 15043(a)(2)(B) (DD Act); 42 U.S.C. § 10805(a)(1)(A) (PAIMI Act);

- **have access to places** where services are provided to people with disabilities both to investigate allegations of abuse and neglect and simply for monitoring, 42 U.S.C. § 15043(a)(2)(H) and 45 C.F.R. § 45 C.F.R. § 1326.27 (DD Act); 42 C.F.R. § 51.42 (PAIMI Act);

- **have access to people with disabilities** in locations where they receive services, 42 U.S.C. § 15043(a)(2)(H) and 45 C.F.R. § 1326.27 (DD Act); 42 U.S.C. § 10805(a)(3) and 42 C.F.R. § 51.42 (PAIMI Act); and

- **have access to records** of people with disabilities under certain defined circumstances (discussed *infra* at 12-14), 42 U.S.C. § 15043(a)(2)(I) and 45 C.F.R. § 1326.25 (DD Act); 42 U.S.C. § 10805(a)(4) and 42 C.F.R. § 51.41 (PAIMI Act).

As the Eleventh Circuit acknowledged:  "It is clear that the Act provides express authority for P&As to gain broad access to records, facilities, and residents to assure that the Act's mandates can be effectively pursued."  *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center*, 97 F.3d 492, 497 (11th Cir. 1996);[2] *see also Disability Rights Wisconsin v. State of Wisconsin Dep't of Public Instruction*, 463 F.3d 719, 725 (7th Cir. 2006) (indicating that Congress intended that P&A systems have "broad investigatory authority to carry out their responsibility to protect individuals with" disabilities).

### III.  P&A SYSTEMS' AUTHORITY UNDER THE DD AND PAIMI ACTS EXTENDS TO PUBLIC SCHOOLS THAT PROVIDE SERVICES TO STUDENTS WITH DISABILITIES.

Courts have recognized that P&A systems' authority under the DD and PAIMI Acts extends to students with disabilities in non-residential public schools. In the seminal case of *Conn. Office of Protection and Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229 (2d Cir. 2006), the court, in an opinion by now-Justice Sotomayor, concluded that the DD and PAIMI Acts cover non-residential public schools that provide services to students with disabilities. *Id.* at 240, 242.  Following the Second Circuit, other courts, too, have applied the

---

[2]   Although the Eleventh Circuit referenced the DD Act, its conclusion applies as well to the PAIMI Act since the statutes are *in pari materia* and so generally should be interpreted consistently.  *See Advocacy, Inc. v. Tarrant County Hosp. Dist.*, No. 4:01-CV-062-BE, 2001 WL 1297688, at *2 n.4 (N.D. Tex. Oct. 11, 2001); *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center*, 894 F. Supp. 424, 428 (M.D. Ala. 1995), *aff'd*, 97 F.3d 492 (11th Cir. 1996); 62 Fed. Reg. 53,548, 53,549 (Oct. 15, 1997).

DD and PAIMI Acts to non-residential public schools. *See Disability Law Center of Alaska v. Anchorage School Dist.*, 581 F.3d 936, 939-40 (9th Cir. 2009) (applying DD Act to P&A's investigation of alleged mistreatment of special education students); *Disability Rights Wisconsin*, 463 F.3d at 726-30 (holding that P&A system was entitled to names of students placed in seclusion rooms); *Disability Rights New York v. North Colonie Bd. of Educ.*, No. 1:14-CV-0744, 2016 WL 1122055, at *4-*5, *9 (N.D.N.Y. Mar. 21, 2016) (holding that public school is subject to DD and PAIMI Acts and granting injunctive relief to P&A); *Michigan Protection and Advocacy Service, Inc. v. Flint Community Schools*, 146 F. Supp. 3d 897, 907 (E.D. Mich. 2015) (granting preliminary injunction to P&A system for access to records of special education students), *app. pending*.

These decisions accord with the interpretation of the United States Department of Health and Human Services (HHS), the federal agency responsible for implementation of the DD and PAIMI Acts.  In multiple *amicus* briefs, HHS affirmed that the DD and PAIMI Acts apply to students with disabilities who receive services in non-residential public schools.  *See* Br. for United States as Amicus Curiae Supporting Appellee at 9-20, *Mich. Protection and Advocacy Service, Inc. v. Flint Community Schools*, No. 15-2573 (6th Cir. Apr. 14, 2016), 2016 WL 1545064; Br. for Dep't of Educ. and Dep't of Health and Human Services as Amici Curiae Supporting Appellees at 8 & n.3, *State of Conn. Office of Protection and Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229 (2d Cir. 2006) (No. 05-1240-CV), 2006 WL 4470911; Statement of

Interest of the United States at 3, 7-11, *Disability Rights New York v. North Colonie Bd. of Educ.*, No. 1:14-cv-744 (DNH/RFT) (N.D.N.Y. July 2, 2015) (ECF Doc. 71), https://www.ada.gov/briefs/north_colonie_soi.pdf.  HHS's recent revisions to the DD Act regulations to conform them to Congress's 2000 amendments to that statute cement the conclusion that the Act applies to non-residential schools.  *See* 45 C.F.R. § 1326.25(f) (requiring educational agencies, including non-residential public schools, to provide parent contact information to P&As when there is probable cause); 45 C.F.R. § 1326.25(b)(1) (defining "records" to include "records prepared or received in the course of providing … education … services").

The application of the DD and PAIMI Acts to public schools reflects the important role of the P&A systems with respect to education of students with disabilities.  Children with disabilities receive many disability services in schools through the IDEA and other statutes, including special education, therapies, and behavioral supports.  Yet, such students may be subject to abuse or neglect in schools just as they could in residential or institutional settings.  *See Disability Rights New York v. North Colonie Bd. of Educ.*, 2016 WL 1122055, at *5 ("As schools play an important role in providing care to children with disabilities, they also raise the possibility of abuse and neglect").  As such, it is vital to extend the P&A systems' authority under the DD and PAIMI Acts to students with disabilities in non-residential public schools.

## IV.  THE SCHOOL DISTRICT'S FAILURE TO PROVIDE DRP WITH THE REQUESTED CONTACT INFORMATION FOR PARENTS AND GUARDIANS OF STUDENTS ON THE <u>WAIT LIST VIOLATED THE DD AND PAIMI ACTS.</u>

As noted, *supra,* at 8, the DD and PAIMI Acts authorize P&A systems, including DRP, to secure records of individuals with developmental disabilities and mental illness under certain defined circumstances, including the following:

- **Authorization** – P&A systems have the right to receive records of an individual with a disability when s/he or his/her legal guardian, conservator, or other legal representative[3] authorizes such access. 42 U.S.C. §§ 15043(a)(2)(I)(i) and 45 C.F.R. § 1326.25(a)(1) (DD Act); 42 U.S.C. § 10805(a)(4)(A) and 42 C.F.R. § 51.41(b)(1) (PAIMI Act).  A P&A system can secure records when it has the individual's or legal representative's authorization regardless of whether there has been any complaint or probable cause to believe that the individual has been subject to abuse or neglect. *See Michigan Protection & Advocacy Service, Inc. v. Flint Community Schools*, 146 F. Supp. 3d at 907-08.

---

[3]  The DD and PAIMI Acts refer to "legal guardians, conservators, and other legal representatives."  *See* 42 U.S.C. §§ 10802(a)(4), 15043(a)(2)(I).  This includes parents and legal guardians for minors.  *See* 45 C.F.R. § 1326.19; *Conn. Office of Protection and Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 355 F. Supp. 2d 649, 662 (D. Conn. 2005), *aff'd*, 464 F.3d 229 (2d Cir. 2006).  For the sake of simplicity, the parents, guardians, and other legal representatives for students on the wait list will be referred to in this Memorandum as "parents."

- **Complaint or Probable Cause** – When an individual with a disability has not authorized access and he or she has a legal representative, the P&A system has the right to access his/her records if:  (a) the system has received a complaint or has probable cause to believe that the individual has been subject to abuse or neglect; (b) the system has contacted the legal representative "*upon receipt of [his/her] name and address*"; and (c) the legal representative fails or refuses to act.  42 U.S.C. § 15043(a)(2)(I)(iii) (emphasis added) and 45 C.F.R. § 1326.25(a)(3) (DD Act); 42 U.S.C. § 10805(a)(4)(C) (emphasis added) and 42 C.F.R. § 51.41(b)(3) (PAIMI Act).  While the DD and PAIMI Acts require the P&A systems to seek the legal representatives' consent, the systems can access the individuals' records if those representatives fail or even affirmatively refuse to authorize access.  *Disability Law Center, Inc. v. Riel*, 130 F. Supp. 2d 294, 299-301 (D. Mass. 2001); *Pennsylvania Protection & Advocacy, Inc. v. Royer-Greaves School for Blind*, No. 98-3995, 1999 WL 179797, at *10 (E.D. Pa. Mar. 25, 1999).[4]

---

[4]  If an individual with a disability cannot authorize access and has no legal representative, the P&A system can access his/her records if it has received a complaint or has probable cause to believe that the individual has been subject to abuse or neglect.  42 U.S.C. §§ 15043(a)(2)(I)(ii) and 45 C.F.R. § 1326.25(a)(2) (DD Act); 42 U.S.C. § 10805(a)(4)(B) and 42 C.F.R. § 51.41(b)(2) (PAIMI Act).

As detailed below, each justification for access to records under the DD and PAIMI Acts provides independent support for DRP's right to receive the contact information from the School District for the parents of the students on the wait list.  First, regardless of whether DRP had received a complaint or had probable cause to believe the wait list students were subject to abuse or neglect, the School District was required to provide the parents' contact information since it effectively denied access to the wait list students' records based on a lack of authorization by the students' parents.  Second, the School District was required to provide DRP with the wait list students' parents' contact information since it had probable cause to believe that those students had been subject to neglect.

### A. Even Absent Probable Cause Relating to Abuse or Neglect, DRP Is Entitled to the Contact Information for Legal Representatives of Students on the Wait List to Seek Their Authorization to Access the Students' Records.

When a P&A system requests records for individuals with disabilities who have legal representatives, the agency or service provider can decline to produce the records if the P&A system does not have authorization from the individuals' legal representatives.  42 C.F.R. § 51.43; 45 C.F.R. § 1326.26.  In such circumstances, however, the agency or service provider must give the P&A systems contact information for the legal representatives, *i.e.*, their names, addresses, and telephone numbers.  42 C.F.R. § 51.43; 45 C.F.R. § 1326.26. This information "shall be provided *whether or not the P&A has probable cause*

to suspect abuse or neglect or has received a complaint." 45 C.F.R. § 1326.26 (emphasis added).

In *Royer-Greaves*, 1999 WL 179797, at *9-*11, Judge Newcomer interpreted this DD Act regulation[5] to require a school to give the P&A system contact information for all of the students' guardians, even though the court had held that the P&A system lacked probable cause to conclude that the students' health or safety was in jeopardy.[6]  The court rejected the school's argument that the P&A system could not get the contact information absent probable cause, reasoning:

> The regulation … must be intended to address the situation where a P&A requests to see the records of a resident or residents at a facility, but is unable to provide a sufficient basis of complaints or probable cause to warrant access, and the resident or residents are not clients of the P&A.  In such a situation, the P&A would need the permission of the guardian to see the records, but conceivably would not know how to contact the guardian, and the facility can simply deny access by telling the P&A that [it] is not authorized to view the records.  This is the situation in the instant case, and *the only remedy is to provide the P&A with the names and addresses of the guardians*.

---

[5]  The regulation cited in *Royer-Greaves*, 45 C.F.R. § 1386.22(i), has been recodified as 45 C.F.R. § 1326.26.  While *Royer-Greaves* involved DD Act regulations, the PAIMI Act includes a virtually identical regulation, 42 C.F.R. § 51.43, and the courts have indicated that the Acts should be construed consistently.  *See* discussion, *supra,* at 9 n.2.

[6]  At the time the court decided *Royer-Greaves*, the DD Act had a more stringent standard for securing access to records in the absence of explicit authorization, requiring a showing of a complaint or probable cause to believe that the individual's health or safety was in serious and immediate jeopardy.  *Royer-Greaves*, 1999 WL 179797, at *7 (citing 42 U.S.C. § 6042(a)(2)(I)(iii)).  Congress subsequently amended the standard, requiring the P&A system to show only that it had received a complaint or had probable cause to believe abuse or neglect has occurred.  42 U.S.C. § 15043(a)(2)(I)(iii)(II).

***

> The Court's reading of the regulation, therefore, merely fills in a
> large gap not affirmatively addressed by the Act but so obvious
> that it most certainly was contemplated by its drafters, namely
> what are the rights of the P&A when it does not have sufficient
> probable cause to demand access to records, and it does not
> know the guardians from whom it must obtain permission.

*Id.*, at *10 (emphasis added); *see also Robbins v. Budke*, 739 F. Supp. 1479,

1489 (D.N.M. 1990) (ordering facility to post a list with the name, address, and

telephone number of each patient for whom guardians have been appointed so

that the P&A system could contact them to obtain consent).

DRP wanted the records of the students on the wait list, but understood

that the School District would have been justified in denying DRP's request for

access to the students' records based on lack of authorization by their parents.

The School District, however, would then be required to provide DRP with the

parents' contact information (regardless of whether DRP had probable cause to

support abuse or neglect).  42 C.F.R. § 51.43; 45 C.F.R. § 1326.26.  Accordingly,

DRP simply asked the School District for the contact information for the students'

parents so that it could then request the parents to authorize access to the

students' records.  The School District's refusal to provide the wait list students'

parents' contact information to DRP precluded DRP from securing authorization

that would entitle them to access under the DD and PAIMI Acts and thus violates

those statutes.

16

**B.  DRP Is Entitled to Contact Information for Parents of
Students on the Wait List Since It Had Probable
Cause to Conclude the Students Were Subject to Neglect.**

A P&A system also is entitled to legal representatives' contact information

pursuant to 42 U.S.C. §§ 10805(a)(4)(C) and 15043(a)(2)(I)(iii) when it has

received a complaint or has probable cause to believe that abuse or neglect has

occurred so that it can contact the legal representatives to offer assistance and, if

they refuse, to access their records.  *See* discussion, *supra*, at 13-14.  Under

those provisions, the statutes explicitly state that the P&A must contact the legal

representatives "upon receipt of the[ir] name[s] and address[es]" in order to "offer

assistance."  Thus, the plain language of the statutes requires that P&A systems

have access to legal representatives' contact information when they have

received complaints or have probable cause to believe that individuals with

disabilities have been subject to abuse or neglect.

The Second Circuit reached the same conclusion in *Hartford Bd. of Educ.*,

464 F.3d at 243-45.  In that case the P&A system requested that the school

district provide it a directory of students and contact information for their legal

representatives.  The court found "persuasive the agencies' view [submitted in an

*amicus* brief] that Congress intended a P&A system to be able to obtain the

names and contact information for the parents or guardians of the students at the

[school]" under the DD and PAIMI Acts at least when the P&A system has made

a probable cause determination.  *Id.* at 244.

17

HHS's recent amendments to the DD Act regulations codifies this interpretation, requiring that "[e]ducational agencies … must provide a P&A [system] with the name and contact information for the parent or guardian of a student for whom the P&A [system] has probable cause to obtain records under the DD Act."  45 C.F.R. § 1326.25(f).  As HHS's Administration on Intellectual and Developmental Disabilities (AIDD) explained:  "Given the obligation of P&As to conduct investigations of incidences of abuse and neglect, as well as the statutory authority under section [42 U.S.C. § 15043](a)(2)(I) to, in certain circumstances, contact an individual's guardian, conservator or legal representative, AIDD has taken the position that a P&A shall have prompt access to contact information of such individuals."  80 Fed. Reg. 44,796, 44,801 (July 27, 2015).[7]

A P&A system is thus entitled to contact information for the legal representatives of individuals with disabilities when it has probable cause to conclude that the individuals were subject to abuse or neglect.  "Probable cause" under the DD and PAIMI Acts means reasonable grounds for belief that an individual with a disability has been, or may be, subject to abuse or neglect.  42 C.F.R. § 51.2; 45 C.F.R. § 1326.19.  The P&A system is the final arbiter of probable cause.  *See*

---

[7]  This provision also reflects AIDD's determination that the DD Act overrides the Family Educational Rights and Privacy Act (FERPA) to permit a P&A to access the names and contact information for parents and guardians of students with disabilities when there is a probable cause determination.  80 Fed. Reg. at 44,803; *accord Anchorage School Dist.*, 581 F.3d at 939-40 (holding that FERPA does not bar P&A's access to contact information).

*Protection and Advocacy System, Inc. v. Freudenthal*, 412 F. Supp. 2d 1211, 1219 (D. Wyo. 2006) (collecting cases); *Ohio Legal Rights Service v. Buckeye Ranch, Inc.*, 365 F. Supp. 2d 877, 877 (S.D. Ohio 2005).  For purposes of the DD and PAIMI Acts, "neglect" means a "negligent act or omission … which caused or may have caused injury or death" to an individual with a disability or which placed him or her "at risk of injury or death."  42 U.S.C. § 10802(5) and 42 C.F.R. § 51.2 (PAIMI Act); 45 C.F.R. § 1326.19 (DD Act).  An "injury" that constitutes "neglect" includes the failure to "establish or carry out an appropriate individual program or treatment plan …."  42 C.F.R. § 51.2 (PAIMI Act); 45 C.F.R. § 1326.19 (DD Act).

Accordingly, a P&A system will have probable cause to believe that a person with a disability has been subject to neglect so as to entitle it to receive his/her legal representative's contact information under the DD and PAIMI Acts when:  (1) it has reasonable grounds for belief that (2) an agency or service provider has failed to establish or implement an appropriate individual program or treatment plan for (3) an individual covered by the DD and/or PAIMI Act (4) which caused or places the individual at risk of injury.  As detailed below, DRP had a reasonable basis to conclude that the students on the School District's wait list were covered by the DD and/or PAIMI Acts and had been subject to neglect, *i.e.*, failure to establish or implement appropriate IEPs, which placed them at risk of injury.  Thus, all four elements are satisfied so as to entitle DRP to access the wait list students' parent contact information under the DD and PAIMI Acts.

### 1.  The School District's Statements Provide Reasonable Grounds for DRP's Neglect Determination.

The statements of the School District and its officials, which DRP received, provided "a reasonable ground for belief" that the wait list students were not receiving education services in accordance with their IEP teams' determinations (which, as described below, constitutes "neglect").  *See* discussion, *supra,* at 2-5. The School District's statements – its resolutions, talking points, and statements to the press – provide ample basis on which to premise a probable cause determination under the DD and PAIMI Acts.  *Cf. Tarwater Developmental Center*, 97 F.3d at 498-99 (holding that anonymous complaint can sustain a probable cause decision).

### 2.  The School District's Statements Reveal that It Failed to Establish or Implement Appropriate IEPs for the Wait List Students, Which Constitutes Neglect Under the DD and PAIMI Acts.

"Neglect" under the DD and PAIMI Acts encompasses the failure to "establish or carry out an appropriate *individual program* or treatment plan."  42 C.F.R. § 51.2 (PAIMI Act) (emphasis added); 45 C.F.R. § 1326.19 (DD Act) (emphasis added).  IEPs are *Individualized* Education *Programs*.  *See* 20 U.S.C. §§ 1401(14), 1414(d)(1)(A)(i).  Thus, a failure to establish or implement an appropriate IEP under the IDEA would fall within the plain language of the regulatory definition of "neglect" pursuant to the DD and PAIMI Acts.[8]

_____

[8]  While there have been no judicial decisions determining that potential violations of the IDEA (including failure to establish or implement IEPs) constitute "neglect" under the DD and PAIMI Acts, the definition of "neglect" to include the

Here, the information from the School District explicitly stated that the wait list students were not receiving services that their IEP teams had determined that they needed – placement in approved private schools – due to a shortage in such placements.  The School District's information further indicated that the wait list students ultimately would not be placed in the Catapult Program, even though the School District had previously stated that such placements were necessary to implement their IEPs.  *See* discussion, *supra,* at 2-5.  Since a student's IEP must identify the special education services he or she needs and the location where the services will be provided, 20 U.S.C. §§ 1414(d)(1)(A)(i)(IV), (VIII), the School District's statements provided reasonable grounds for DRP to conclude that either:  (1) the wait list students' IEPs were not appropriate because they did not include their IEP teams' recommendations, or (2) that wait list students' IEPs included the IEP teams' recommendations, but the School District was not implementing those recommendations.  If, as the documents reflected, the School District failed to establish or implement appropriate individual programs – IEPs – for the wait list students, it would constitute "neglect" under the DD and PAIMI Acts.

It is not necessary for DRP to prove or for this Court to determine that the School District in fact had subjected the wait list students to neglect or violated

_____

failure to establish or carry out appropriate "individual program[s]" plainly encompasses a school district's failure to establish or carry out an appropriate IEP.

21

their rights under the IDEA.  Nor can the School District defend DRP's DD and PAIMI Act claims on the basis that it did not neglect the wait list students or violate their rights under the IDEA.  The only question to be determined in this case is whether DRP had *probable cause* that the wait list students had been subject to neglect so as to warrant its further inquiry, including by accessing the students' records once it received their parents' contact information.  *See J.S. Tarwater Developmental Center*, 894 F. Supp. at 429.  To hold otherwise would allow disability service providers to refuse to provide P&A systems with the information to which they are entitled under the DD and PAIMI Acts to enable them to conduct investigations and fulfill their congressionally mandated role.

### 3.  The Wait List Students Are Covered by the DD Act and/or the PAIMI Act.

The School District's statements noted that the wait list students all had IEPs, *see* discussion, *supra,* at 3, 4, which meant that it had determined those students to have disabilities under the IDEA.  *See* 20 U.S.C. § 1414(d)(1)(A)(i). The School District more specifically stated that the students to be placed in the Catapult Program, including initially those on the wait list, had significant disabilities, including emotional disturbance, intellectual disability, and autism. *See* discussion, *supra,* at 2.  The severity of the students' disabilities, which arose before age 22, suggest that they would substantially limit their major life activities so as to fall within the definition of "developmental disability" under the DD Act, 42 U.S.C. § 15002(8)(A).  Alternatively, many would have had mental

illness or emotional disabilities so as to be covered by the PAIMI Act, 42 U.S.C. §
10802(4).

P&A systems need not "'make a threshold showing of mental illness or
developmental disability" as long as they have "'substantial evidence'" that the
individuals have disabilities covered by the DD or PAIMI Acts. *See Disability
Rights New York v. North Colonie Bd. of Educ.*, 2016 WL 1122055, at *7
(citations omitted). Here, the School District's statements are more than suffi-
cient to support the conclusion that the students on the wait list were individuals
with disabilities covered by the DD Act or, alternatively, the PAIMI Act.

### 4. DRP Had Reasonable Grounds to Conclude That the Students on the Wait List Were At Risk of Injury.

Finally, DRP had reason to conclude that students on the wait list, at the
very least, were subject to a "risk of injury" due to the School District's neglect,
*i.e.*, its failure to establish and implement appropriate IEPs. If the students were
not receiving the educational services that their IEP Teams had determined they
need, there was a strong basis to suspect that they were being denied critical
educational services, which could lead to regression or escalating behavioral
issues and impede their ability to learn. Thus, DRP had a reasonable basis to
believe that the School District's failure to provide students with disabilities with
the special education services delineated in their IEPs and to which they are
entitled under the IDEA placed those students at risk of injury. *See Melissa S. v.
School Dist. of Pittsburgh*, 183 F. App'x 184, 187 (3d Cir. 2006) (recognizing that

23

school district's failure to implement a substantial or significant provision of an IEP can violate the IDEA); *School Dist. of Phila. v. Drummond*, No. 14-2804, 2016 WL 1444581, at *6 (E.D. Pa. Apr. 12, 2016) (same); *cf. Michigan Protection & Advocacy Services, Inc. v. Flint Community Schools*, 146 F. Supp. 3d at 903 (noting that delay in provision of special education records to P&A system can result in inadequate education to students).[9]

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court enter summary judgment in its favor and against Defendant and order Defendants to promptly produce the requested contact information.

Respectfully submitted,

Dated:  March 1, 2018                    By:    /s/ Gabriella Labella
                                                Gabriella Labella (PA ID # 87858)
                                                Robin Resnick (PA ID # 46980)
                                                Disability Rights Pennsylvania
                                                1315 Walnut Street, Suite 500
                                                Philadelphia, PA  19107-4705
                                                215-238-8070

                                                Counsel for Plaintiff

---

[9] Whether or not the School District's possible neglect of the wait list students is ongoing is irrelevant since DRP is entitled to investigate past harm; there is no requirement that a P&A show continuing potential for harm.  *See Anchorage School Dist.*, 581 F.3d at 939.

<u>**CERTIFICATE OF SERVICE**</u>

I, Robin Resnick, hereby certify that Plaintiff's Motion for Summary

Judgment, Memorandum of Law and Exhibits in support thereof, and proposed

Order were filed on March 1, 2018 with the Court's ECF system and are available

for viewing and downloading from the ECF system by the following counsel who

consented to electronic service:

John J. Coyle, Esquire
Assistant General Counsel
Miles H. Shore, Esquire
Deputy General Counsel
The School District of Philadelphia
440 North Broad Street, Suite 313
Philadelphia, PA  19130

/s/ Robin Resnick
Robin Resnick