# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DISABILITY RIGHTS PENNSYLVANIA<br>*Plaintiff* | : : : : | CIVIL ACTION<br><br>NO. 17-4858 |
| v. | : : | |
| SCHOOL DISTRICT OF PHILADELPHIA, *et al.*<br>*Defendants* | : : : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                          MARCH 27, 2019

## MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Disability Rights Pennsylvania ("Plaintiff") brought this action pursuant to 42 U.S.C. § 1983, the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act"), 42 U.S.C. §§ 15041-45, and the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. §§ 10801-10827 (collectively, the "Acts"), against Defendants School District of Philadelphia (the "School District") and William R. Hite, Jr., in his official capacity as Superintendent of the School District (collectively, "Defendants"). In the complaint, Plaintiff seeks declaratory and injunctive relief, specifically in the form of a finding that the DD Act and/or the PAIMI Act entitle Plaintiff to the contact information of the parents and/or legal guardians of students with Individualized Education Programs ("IEP"); information Defendants possess and have refused to provide. [ECF 1].

Presently before this Court are Plaintiff's *motion for summary judgment* filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, in which Plaintiff argues that it is entitled to the requested contact information as a matter of law [ECF 6], and Defendants' *motion for judgment*

*on the pleadings* filed pursuant to Rule 12(c), in which Defendants argue that Plaintiff's investigative authority does not encompass the failure to provide the "free appropriate public education" ("FAPE") guaranteed by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*,[1] to disabled children in states receiving federal education funding. [ECF 7]. Defendants appear to suggest that requiring the release of the parents' and/or guardians' contact information would impermissibly expand Plaintiff's statutory authority. The parties' motions are effectively cross-motions, each requesting a ruling on whether Plaintiff is entitled to the requested contact information as a matter of law.[2] For the reasons set forth, this Court finds that Plaintiff is entitled to the requested contact information.[3] Accordingly, Plaintiff's motion is granted, Defendants' motion is denied, and summary judgment is entered in favor of Plaintiff.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a Pennsylvania non-profit corporation designated by the Commonwealth of Pennsylvania to serve as the state's protection and advocacy ("P&A") system and to carry out the

---

[1]  The Individuals with Disabilities Education Act was amended and renamed the Individuals with Disabilities Education Improvement Act, effective July 1, 2005. *See* Pub. L. No. 108-446, 118 Stat. 2647, 2803 (2004). Notwithstanding this change in the name of the statute, courts and litigants, including the parties in this action, continue to refer to this statute as the IDEA. *See, e.g., H.E. v. Walter D. Palmer Leadership Learning Partners Charter School*, 873 F.3d 406, 408 (3d Cir. 2017). For clarity, this Court will refer to this statute as the IDEA in this Memorandum Opinion.

[2]  Indeed, in a discovery report filed jointly in the instant matter the parties indicate that they:

> [A]gree that the primary issue . . . is a legal one – whether DRP, as the [Protection and Advocacy] system [in Pennsylvania], has the right under the DD and PAIMI Acts to receive contact information for parents of students on the wait list [for special education programming]. Notably, the relevant issue is not whether the wait list students were or were not receiving special education services they needed, but only whether DRP had a legal basis to secure the parent contact information under the DD and PAIMI Acts.

[ECF 12 at 3-4].

[3]  This Court also considered Plaintiff's response to Defendants' motion, [ECF 10], and Defendants' response to Plaintiff's motion. [ECF 11].

2

federally-mandated activities of advocating for and protecting individuals with developmental disabilities and mental illnesses pursuant to, *inter alia*, the Acts. Under the Acts, designated P&A systems have authority to investigate suspected abuse and neglect of these individuals.

Here, Plaintiff alleges that after a June 2017 meeting of the School Reform Commission addressing program placements for students with significant and multiple disabilities, Defendant Hite stated: "'There are a significant number of children who should be in those placements who cannot get in. They're on a waitlist, if you will. Quite frankly, there are no providers that will currently take those children.'" [ECF 1 at 7]. Plaintiff also alleges that it "received complaints about those students" on the waitlist. While Defendants dispute these allegations, they admit in their answer to the complaint that on multiple occasions in the late summer and early fall of 2017, Plaintiff contacted the School District's Interim General Counsel by email and first-class mail and requested the contact information for the parents and legal guardians of students on the purported waitlist. Further, the parties' filings and legal positions throughout this action make clear that the requested contact information was never provided.

**LEGAL STANDARD**

Rule 56 governs summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, this rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).

3

Generally, Rule 56(c) provides that the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the moving party has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." *See* Rule 56(c)(1)(A-B).

Judgment on the pleadings "is appropriate if 'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Jackson v. Sci*, 671 F. App'x 23, 24 (3d Cir. 2016) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F. 2d 289, 290 (3d Cir. 1988)). "In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017).

In its *motion for summary judgment*, Plaintiff asserts that "the only issue in dispute is the interpretation of the governing law." In their response to Plaintiff's motion, Defendants do not challenge Plaintiff's account of the facts or exhibits. Instead, Defendants restrict their analysis to the scope of Plaintiff's legal authority and make no mention of whether any issue of material fact

4

exists. [ECF 11]. Accordingly, since no issue of material fact has been claimed, judgment would appropriate if a party has established that it is entitled to judgment as a matter of law.

**DISCUSSION**

Concisely, the issue here is whether, as a matter of law, Plaintiff is entitled under the Acts to the contact information of the parents and/or legal guardians of students on an alleged waitlist for special education programming. Though Defendants have not admitted that such a waitlist exists,[4] under the circumstances of this case, it is not necessary for this Court to make such a determination. To determine whether Plaintiff is entitled to the requested contact information, however, a brief review of the Acts is warranted.

In 1975, the DD Act established a program in which each state would designate a P&A system "to protect the legal and human rights of individuals with developmental disabilities." *See* 42 U.S.C. § 15041. This mission was expanded by the PAIMI Act in 1986 "to ensure that the rights of individuals with mental illness are protected." *See* 42 U.S.C § 10801. Under these Acts, each state's P&A system is authorized to, *inter alia*, "investigate incidents of abuse and neglect of individuals" with developmental disabilities and/or mental illness, "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals" with developmental disabilities and/or mental illness, and "have access to all records" of individuals with developmental disabilities and/or mental illness under certain circumstances. 42 U.S.C. § 15043.[5] Importantly, Plaintiff here seeks access *only* to the *contact information* of the parents, guardians

---

[4] Notably, in response to Plaintiff's motion for summary judgment, Defendants do not contest Plaintiff's proffered evidence of the existence of such a waitlist.

[5] The language quoted (from the DD Act) is identical in the corresponding section of the PAIMI Act, 42 U.S.C. § 10805.

5

and/or representatives of students on the alleged waitlist. However, far beyond contact information, the Acts provide that P&A systems are able to access "*all* records," including sensitive treatment and evaluation records, of "any individual" with a developmental disability or mental illness when (1) access is authorized by the individual or a legal representative; (2) the P&A system has received a complaint about the status or treatment of the individual or has probable cause to believe that the individual has been subject to abuse or neglect, and the individual is unable to authorize access, and does not have a legal representative; or (3) the P&A system has received a complaint about the status or treatment of the individual or has probable cause to believe that the individual has been subject to abuse or neglect, and has contacted the legal representative of the individual, and such representative has failed or refused to act on the individual's behalf. *See id.* (emphasis added); 42 U.S.C. § 10805.

In opposing Plaintiff's access to the contact information, Defendants challenge the scope of Plaintiff's authority and argue that said authority does not extend to investigating suspected denials of FAPE under the IDEA. Specifically, Defendants argue that Plaintiff is not entitled to the contact information because a denial of FAPE does not meet the Acts' definitions of abuse and/or neglect and, therefore, Plaintiff does not have probable cause to suspect abuse or neglect. This Court finds, however, that Defendants' argument is misguided. Pursuant to the appropriate regulations, Plaintiff does not need to establish probable cause to obtain the contact information it seeks in this litigation. *See* 45 C.F.R. § 1326.26. Probable cause is merely one basis on which a P&A system may access records covered by the Acts. *See* 42 U.S.C. § 15043; 42 U.S.C. § 10805. Further, while probable cause might entitle Plaintiff to access *all* of the treatment and investigative records of students covered by the Acts, Plaintiff has sought access only to the *contact information* of the students' parents or legal guardians; information to which Plaintiff is entitled under the Acts'

implementing regulations, "whether or not [Plaintiff] has probable cause to suspect abuse or neglect or has received a complaint." *See* 45 C.F.R. § 1326.26.

The regulations promulgated under the Acts anticipated cases such as this one, where a P&A system seeks authorization to access records but cannot obtain authorization without the legal guardians' contact information. For example, 45 C.F.R. § 1326.26 provides as follows:

> If a P&A system's access is denied or delayed beyond the deadlines specified in § 1326.25, the P&A system shall be provided, within one business day after the expiration of such deadline, with a written statement of reasons for the denial or delay. In the case of a denial for alleged lack of authorization, the name, address and telephone number of individuals with developmental disabilities and legal guardians, conservators, or other legal representative will be included in the aforementioned response. All of the above information shall be provided whether or not the P&A has probable cause to suspect abuse or neglect, or has received a complaint.

45 C.F.R. § 1326.26.[6] Here, Plaintiff was unable to obtain authorization to access student records without first contacting parents and legal guardians and, therefore, requested the contact information from Defendants. Although in their answer to the complaint Defendants admitted to having received multiple requests from Plaintiff, Defendants neither admitted nor denied whether and/or how they responded to those requests, leading to the conclusion that the requests were never fulfilled. Defendants' inaction has effectively denied Plaintiff the opportunity to obtain authorization to access the records. In such a case, 45 C.F.R. § 1326.26 requires that the entity denying access provide the contact information for the legal representatives of the individuals whose records the P&A seeks. Defendant has offered no legal basis to support its refusal to comply with the regulation.

---

[6] The PAIMI counterpart of 45 C.F.R. § 1326.26 is 42 C.F.R § 51.43, which similarly provides that "[if] a P&A system's access to . . . records covered by the Act or this part is delayed or denied, the P&A system shall be provided promptly with a written statement of reasons, including, in the case of a denial for alleged lack of authorization, the name, address and telephone number of the legal guardian, conservator, or other legal representative of an individual with mental illness."

7

Further, this case is similar to *Pennsylvania Protection & Advocacy v. Royer-Greaves School for the Blind.*, 1999 WL 179797 (E.D. Pa. Mar. 25, 1999). There, the defendant school for "multi-handicapped, mentally challenged blind students," argued that the plaintiff, a P&A system, was "not entitled to a list of guardians because []P&A never established a right to review the records" of the students at the school. *Id.* at *7. The court found, however, that "the plain language of the regulation" supported the conclusion that the plaintiff was entitled to receive the names and contact information of the guardians of the students with developmental disabilities at the school. The court further observed that "[the] logic of this conclusion suggests that all a P&A must do to receive a list of guardians is to ask for it," which is precisely what Plaintiff, in this matter, has done. *Id.* at *9. In making this observation, the court determined that the regulations "must be intended to address the situation" where a P&A wishes to investigate but, because it cannot exercise its other bases for records access, "would need the permission of the guardian to see the records, but conceivably would not know how to contact the guardian, and the facility can simply deny access by telling the P&A that they are not authorized to view the records." *Id.* at *10. In such a situation, the court concluded, "the only remedy is to provide the P&A with the names and addresses of the guardians." *Id.*

The *Royer-Greaves* court reached this conclusion after finding that the P&A system plaintiff lacked probable cause to investigate. This Court notes, however, that the same logic applies here, where no determination is made whether probable cause is present. As such, even if a P&A system has probable cause to investigate, if the student in question has a legal guardian, conservator, or representative, the Acts require that "such representative ha[ve] been contacted by [the] system" before the P&A system can access the student's records. 42 U.S.C. § 15043(a)(2)(I)(iii); 42 U.S.C. § 10805(a)(4)(C). In light of the Acts' clear intention that P&A

systems be able to contact parents or legal guardians to seek authorization, this Court is persuaded by the *Royer-Greaves* court's analysis regarding the intent behind the implementing regulations.

Therefore, this Court finds that under 45 C.F.R. § 1326.26 and 42 C.F.R. § 51.43, Defendants must provide Plaintiff with the requested contact information.[7] In light of the plain meaning and purpose of these regulations, Plaintiff's motion for summary judgment is granted, and Defendants' motion for judgment on the pleadings is denied. Accordingly, Defendants are directed to provide Plaintiff with the contact information Plaintiff requested.

## CONCLUSION

For the reasons stated, Plaintiff's motion for summary judgment is granted, and Defendants' motion for judgment on the pleadings is denied. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.

---

[7] Defendants warn that a ruling in Plaintiff's favor would undermine the IDEA's purpose, displacing parents' role in the "cooperative process" of providing a FAPE to qualifying students by replacing parents with a third-party organization that "has not been involved in the IDEA process" and "knows nothing of the individual student and her needs." [ECF 7 at 15]. This argument is misplaced, since a ruling in Defendants' favor would do more to displace parents' role in the treatment of their children (by frustrating P&A systems' ability to obtain guardians' authorization to access their children's records) than would a ruling in Plaintiff's favor, which invites P&A systems to involve guardians in their investigations.